BROADRIVER, INC. *v.* CITY OF STAMFORD ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued October 14—decided December 3, 1969

*Julius B. Kuriansky,* for the appellant (plaintiff).

*Robert M. Wechsler,* with whom were *Cary L. Fleisher* and, on the brief, *Bernard Glazer,* for the appellees (defendants).

ALCORN, J. The plaintiff owns slightly less than a quarter of an acre of land which is on the periphery of a 130-acre redevelopment area in the center of Stamford. Situated on the plaintiff's land is an old frame barn and an unsightly former residence over seventy-five years old which has been converted to commercial uses. The buildings are substandard, and the most effective, highest and best use is not now being made of the property.

The plaintiff brought this action against the city of Stamford, the members of the Stamford redevelopment commission, hereinafter called the commission, and the clerk of the Superior Court at Stamford, seeking temporary and permanent injunctions and damages. The injunctions prayed for are to restrain the city and its redevelopment commission from condemning the plaintiff's property; to restrain them from filing further "condemnation papers" and to order them to release and withdraw those already filed; and to restrain the clerk of the Superior Court from issuing a certificate of taking. Judgment that the city and the "members" of the redevelopment commission have no interest in the plaintiff's property is sought.

The complaint, as amended, contains five counts. The first count, in substance, alleges that the city and its redevelopment commission acted capriciously and arbitrarily in taking the plaintiff's property for a private rather than a public use in order to attract sponsors for the redevelopment. The second count alleges that the city and its redevelopment commission had unnecessarily planned to take

a segment of the plaintiff's land for street widening and that they incorrectly claimed that the remainder of the plaintiff's land would be narrow and economically unusable, a determination which should be left to the plaintiff. The third count alleges that the city and its redevelopment commission have deprived the plaintiff of due process by purporting to take the segment of land for street widening under the statutes relating to redevelopment rather than those relating to eminent domain. The fourth count alleges that the city and its redevelopment commission have caused loss to the plaintiff by disparaging the value of its land. The fifth count alleges that the defendants failed to meet the requirements of General Statutes § 8-129 in order to accomplish a valid and constitutional taking of the plaintiff's property.

The original complaint, containing the first four counts, was filed on August 23, 1966. Following a hearing in September, 1966, temporary injunctions were denied by the court. The fifth count was added to the complaint in April, 1967, and thereafter trial was had on the issue of a permanent injunction. The record and briefs disclose that the claim for damages was abandoned. The court found for the defendants on the remaining issues, and the plaintiff has appealed.

We turn our attention first to the plaintiff's attack on the procedure for the taking under General Statutes § 8-129. The pertinent part of the statute provides that the redevelopment agency shall file with the clerk of the Superior Court a statement setting forth a description of the property to be taken, the names of all persons having a record interest in it and the amount of compensation determined to be paid for it, with a deposit and bond;

that it shall then cause a copy of the statement to be recorded with the town clerk of the town in which the land is located and give notice to each person appearing of record as an owner of, or an encumbrancer on, the property, the method of giving such notice being specified; and that "[n]ot less than twelve days nor more than ninety days after such notice and such statement of compensation have been so served or so mailed and first published" the redevelopment agency shall file with the clerk of the Superior Court a return setting forth the notice given, whereupon the clerk shall issue a certificate of taking which, upon its being recorded with the town clerk in the town where the land is situated, shall vest title to the property in the municipality in fee simple and the right to just compensation shall vest in the persons entitled thereto.

The plaintiff claims, first, that the certificate of taking was not issued by the clerk of the Superior Court nor recorded in the town clerk's office in Stamford within the time required by the statute and, second, that the statute operates unconstitutionally in this case because the city was permitted to obtain title to the plaintiff's property by the issuance of a certificate of taking before the determination of the present action, which was brought to test the legality of the taking. In other words, the plaintiff makes the double-barreled claim that the certificate of taking was filed too late and too soon.

The finding of the court, which is not subject to correction, is that the commission filed a notice of taking and statement of compensation on July 14, 1966. On August 23, 1966, the complaint in the present action was filed. On December 20, 1966, the trial court, after hearing, denied the plaintiff's application for temporary injunctions, and on Feb-

ruary 1, 1967, the clerk of the Superior Court issued a certificate of taking which was, on that day, recorded in the office of the town clerk in Stamford.

The plaintiff concedes that, as this court has held in *Bahr Corporation* v. *O'Brion,* 146 Conn. 237, 246, 149 A.2d 691, the statute (§ 8-129) is not unconstitutional because of any failure to provide for a judicial review of the validity of the taking. As we pointed out in that case (p. 247), the constitutional right to due process is protected by the plaintiff's privilege to seek relief by court action. The plaintiff availed itself of that privilege by bringing this action thirty-five days after the notice of taking and statement of compensation was filed. The temporary relief requested was identical to the plaintiff's ultimate objective, namely, to restrain the city and the commission from taking the plaintiff's property and from filing any further "condemnation papers" and to restrain the clerk of the Superior Court from issuing a certificate of taking.

With that action pending the defendants properly refrained from taking any further steps under § 8-129 until the court had acted on the claim for temporary relief. In the event that the court should decide to grant the requested relief, the defendants, in all probability, would be enjoined, until the case should be finally determined, from doing those things which the statute required them to do. *Deming* v. *Bradstreet,* 85 Conn. 650, 659, 84 A. 116.

The plaintiff's application for a temporary injunction was fully heard by the court and was denied on December 20, 1966. The maximum period of ninety days within which § 8-129 required the filing of the return upon the basis of which the clerk was directed to issue the certificate of taking had then long since expired. The action of the court had,

however, freed the defendants of the threat of restraint from proceeding as the statute required, pending the court's final decision on the ultimate issue. They were justified in interpreting the decision as a conclusion, by the court, that no such restraint was required in order to protect the rights of the parties during the pendency of the action. *Deming* v. *Bradstreet, supra.*

The denial of the temporary injunction nevertheless left the plaintiff free to obtain a full and final determination of the issues it had raised and, if successful, to obtain the relief sought regardless of what, if any, action the defendants might see fit to take in the interim. *Industrial Bank of Washington* v. *Tobriner,* 405 F.2d 1321, 1323 (D.C. Cir.); *Ramsburg* v. *American Investment Co. of Illinois,* 231 F.2d 333, 336 (7th Cir.); *Turney* v. *Shriver,* 269 Ill. 164, 172, 109 N.E. 708; 42 Am. Jur. 2d, Injunctions, § 318. At the same time, the defendants would, as the cases cited indicate, act at their peril if they undertook to do any act which the plaintiff sought to enjoin. The court's power to restore the status quo or to grant such other relief as might be proper remained unaffected by the disposition made of the temporary injunction. See *Jones* v. *Securities & Exchange Commission,* 298 U.S. 1, 17, 18, 56 S. Ct. 654, 80 L. Ed. 1015; *Texas & N.O.R. Co.* v. *Northside Belt Ry. Co.,* 276 U.S. 475, 479, 48 S. Ct. 361, 72 L. Ed. 661; 42 Am. Jur. 2d, Injunctions, § 16. Consequently, the plaintiff's rights were fully protected, the issuance of a certificate of taking notwithstanding.

Under those circumstances, the defendants continued with the procedures required by General Statutes § 8-129 and, without unreasonable delay, on February 1, 1967, the certificate of taking was issued

by the clerk. We have said that strict compliance with the steps enumerated by statute is essential to the validity of proceedings for the adoption of a redevelopment plan. *Sheehan* v. *Altschuler,* 148 Conn. 517, 523, 172 A.2d 897. We were discussing, in that case, the requirement laid down by § 8-127 for a public hearing before a redevelopment plan could be adopted, or, in other words, action which was basic to the objective to be accomplished.

The most satisfactory test of whether a statute is mandatory or merely directory "is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words whether it relates to matter of substance or to matter of convenience." *International Brotherhoood of Team-sters* v. *Shapiro,* 138 Conn. 57, 68, 82 A.2d 345; *Gallup* v. *Smith,* 59 Conn. 354, 358, 22 A. 334. Where the thing required to be done is one of substance the statutory provision is mandatory. *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 451, 190 A.2d 591; *Blake* v. *Meyer,* 145 Conn. 612, 616, 145 A.2d 584. However, "[l]egislative provisions designed to secure order, system and dispatch in proceedings are ordinarily held to be directory where, as here, they are stated in affirmative terms or, to express it differently, are unaccompanied by negative words." *Winslow* v. *Zoning Board,* 143 Conn. 381, 388, 122 A.2d 789. Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply. *Nielsen* v. *Board of Appeals on Zoning,* 129 Conn. 285, 287, 27 A.2d 392; see *Wilson Point Property Owners Assn.* v. *Connecticut Light & Power Co.,* 145 Conn. 243, 266, 140 A.2d 874.

The obvious purpose of the ninety-days requirement in § 8-129 is to guard against the harm which

could result to a property owner from an unreasonable delay between the notice of taking and the actual taking. The statute contains nothing to invalidate a belated title transfer or which inferentially makes compliance with the time requirement a condition precedent. *International Brotherhood of Teamsters* v. *Shapiro,* supra. Section 8-129 provides that, upon issuance of the certificate of taking by the clerk, title shall vest in the municipality, and the right to compensation shall vest in the property owner. The time fixed by the statute within which the return of notice shall be filed is "designed to secure order, system and dispatch", *Winslow* v. *Zoning Board,* supra, in defining when title shall pass and when the property owner's right to compensation shall mature. Under the circumstances disclosed, strict compliance with the time requirement was not required in order to accomplish a valid taking of the plaintiff's property.

The plaintiff would have us hold that, by deferring action under § 8-129 pending the decision of the court on the temporary injunction until too late for strict compliance with the mandate of the statute, the municipality has lost any right to acquire the property. Such a construction of the statute would permit any objecting condemnee to defeat a taking under § 8-129 by the simple expedient of an application for injunctive relief sufficiently prolonged unless the condemnor, at its peril, chose to act in the face of the threat of a restraining order. Under the plaintiff's theory, once the time limit fixed in the statute had passed, and even though the case had not been reached for hearing even on an application for a temporary injunction, the condemnee would have attained his ultimate objective without the necessity of a final hearing on the main

issue because the condemnor's right to acquire the property already would have been defeated. Where, as in this case, the property owner has initiated action designed to defeat the taking, that action should not be allowed to accomplish an anomalous result. The plaintiff gains nothing by its attack on the procedure under § 8-129.

The numerous other claims of the plaintiff all concentrate basically on the proposition that, for various reasons, the action of the redevelopment commission in taking the plaintiff's property as part of the redevelopment plan was unreasonable, taken in bad faith and amounted to an abuse of the power conferred upon it. In support of these claims it is argued that the plaintiff's property was, in reality, taken for a private purpose through the unjustified reliance, by the commission, on an unenforceable and sham contract utilized to permit preselected redevelopers to control decisions which the commission should have made; and that the commission illegally designated certain properties, including the plaintiff's, within the redevelopment area for condemnation while permitting others to be developed to conservation standards by the existing owners.

The commission is invested with broad powers to carry out urban renewal projects including the acquisition of property and reconstruction of streets; General Statutes § 8-141; and plans for carrying out the demolition or the voluntary rehabilitation of buildings. § 8-143; *Graham* v. *Houlihan,* 147 Conn. 321, 328, 160 A.2d 745, cert. denied, 364 U.S. 833, 81 S. Ct. 70, 5 L. Ed. 2d 57. In addition to the facts already recited, the court has found that, following a study of the area to be included in the downtown redevelopment area, the commission adopted a plan for the redevelopment of the central core of the

city of Stamford in order to eliminate blight and deterioration in the downtown area and provide an environment conducive to the full economic and social potential of the area. The plan as originally conceived did not include the plaintiff's land. The plaintiff's property, however, is on the corner of Broad and River Streets, a strategic corner of the redevelopment area and one of the most heavily traveled areas in the city. The corner has been one of the most dangerous in Stamford. In February, 1963, an extended development plan, which included the plaintiff's property, was adopted by the commission, as permitted by General Statutes § 8-136, and was approved by the Stamford board of representatives, the federal government, and the Stamford planning board. Directly across Broad Street from the plaintiff's property is the Bloomingdale Department Store complex, which although not geographically in the redevelopment area is nevertheless a factor of major importance to the redevelopment. The redevelopment plan contemplated a main traffic loop, of which Broad and River Streets would form a part, around the redevelopment area. Construction of this loop required a widening and improvement of Broad and River Streets. The commission determined that 3600 square feet of the plaintiff's property was necessary to be taken for the widening and realignment of this intersection. The remainder of the plaintiff's property is an inadequate unit of development by itself because of its size and location, and the commission planned to combine it, for disposition, with another parcel. The commission's plan was to acquire certain of the properties within the redevelopment area, including the plaintiff's, and to allow others to remain in private ownership subject to being brought to

conservation standards. The plaintiff's property is vital to the plan because it serves as a connection between the Bloomingdale complex and the redevelopment area.

The plaintiff makes no claim that the commission had not determined, legally and in good faith, the total area of redevelopment. Nor does it contend that its own property was not a fit subject for development. On the contrary, the court has found that, for over twenty years, the plaintiff had recognized the need for improving its property but had done nothing about it. The basic assertion is that the plaintiff should be permitted to improve its property to acceptable standards itself, as some other owners in the redevelopment area are permitted to do, rather than to have it taken by the commission and transferred to others for redevelopment. No facts appear which would indicate that the commission had acted unreasonably or in a discriminatory manner in deciding to acquire the plaintiff's property. Looming large in the plaintiff's contention, however, is the claim that the commission has purported to contract with redevelopers for the property but that the purported contract is nothing more than an illusory and void instrument designed to favor the private interests of the redevelopers.

It is well settled that the determination of what property is necessary to be taken in order to effectuate the public purpose of the redevelopment rested with the commission subject to proper review by the court. *Gohld Realty Co.* v. *Hartford,* 141 Conn. 135, 147, 104 A.2d 365. And where the public use which justifies the taking of the area in the first instance exists, an element over which there is no controversy in the present case, that same public

purpose continues even though the property is later transferred to private persons. Id., 143. Although the plaintiff's concern is for its own parcel within the redevelopment area, the commission's responsibility was to consider conditions existing in the entire area including such matters as street layouts and the relation and significance of the plaintiff's property to the entire area. *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 52, 184 A.2d 797.

It is unnecessary to elaborate upon the details of the contract between the commission and the redeveloper which the plaintiff claims is illusory and void. It is sufficient to say that a lengthy instrument had been executed between the commission and Seon Pierre Bonan and the F. D. Rich Company, Inc., as redevelopers, which the commission asserts to be a valid and binding contract looking to the performance, by the redevelopers, of various preliminary obligations and the ultimate purchase, for redevelopment, of properties acquired by the commission. The plaintiff attempts to show that it was denied the right to improve its property, instead of having it taken, only because the commission conditioned the plaintiff's exercise of that right solely on the consent of the redeveloper to which the commission considered itself bound by the allegedly void contract.

The short answer to that contention is that, regardless of whether the contract was or was not binding, the plaintiff has failed to show that the commission has acted as the plaintiff claims. Any action by the commission required a majority vote of its members. General Statutes § 8-126. From the evidence before it, the court has found that the president of the plaintiff corporation met with the chairman of the commission, the plaintiff's attorney

and two men whose connection with the controversy does not appear. The meeting was requested by the plaintiff's attorney and, at it, the plaintiff's president "maintained that he was prepared to develop" the portion of the property not needed for the street improvement either as one piece or in combination with other property in the redevelopment area. He was told by someone at the meeting, but the identity of his informant does not appear, that "the land in the project for private development" was to be offered first to the redeveloper under "an agreement." Either the chairman of the commission or one of the unidentified men at the meeting suggested that the plaintiff's president attempt to agree with the redeveloper that, either alone or in conjunction with the redeveloper, the plaintiff might develop its property and that if such agreement was reached it would be recommended to the commission. No one at the meeting had any authority to bind the commission, and the plaintiff's president was unable to agree with the redeveloper.

There is nothing in the foregoing which can be tortured into a finding that the commission itself did anything in this episode, either in reliance on any contract or otherwise. The most which can be gleaned from it is that the plaintiff was extended a courtesy which its situation did not demand. The court concluded that, in taking the plaintiff's property, and in all other aspects of the redevelopment procedures attacked by the plaintiff, the commission did not act unreasonably, in bad faith or by abusing the powers conferred on it. The subordinate facts found, which are not subject to correction, support those conclusions.

There is no error.

In this opinion the other judges concurred.