## CONNECTICUT LIGHT AND POWER COMPANY *v.* WANDA L. HUSCHKE ET AL.

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE No. 156431
                      NEW HAVEN

Memorandum filed April 4, 1979

*Carmody & Torrance,* for the plaintiff.

*Charles A. Sherwood,* for the defendant Wanda L. Huschke.

BERDON, J. The plaintiff Connecticut Light and Power Company seeks to exercise its power of eminent domain by taking an easement over land owned by the defendant Wanda L. Huschke for the purpose of constructing a 115 kilovolt electric transmission line from Branford to Old Saybrook. The application of the plaintiff seeks the appointment of three disinterested citizens to serve as a committee to assess damages for its proposed taking under the charter granted to the plaintiff by the legislature. 14 Spec. Laws 860 (Approved June 22, 1905).

The property of the defendant on which the plaintiff seeks to take an easement is located on Notch Hill Road in the town of North Branford. It consists of four building lots which are used by her for a personal residence and for other incidental uses, including a stable and fields for horses.

The easement the utility seeks is 150 feet in width and traverses three of the four lots owned by the defendant, including a small portion of the lot on which her home is situated. The proposed easement will destroy the use of two of the lots for building purposes.

The defendant objects to the taking and she has filed several special defenses including the defense

that the plaintiff does not have authority to take the easement by eminent domain.[1] Raising special defenses to a petition for the appointment of a committee is a proper procedure to test the validity of the plaintiff's proposed taking. *Bridgeport Hydraulic Co.* v. *Rempsen,* 124 Conn. 437, 442.

It is fundamental that state government may take private property for public use under its power of eminent domain. Conn. Const., art. I § 11; *Northeastern Gas Transmission Co.* v. *Collins,* 138 Conn. 582, 586. "The determination of what property is necessary to be taken in any given case in order to effectuate the public purpose is, under our constitution, a matter for the exercise of the legislative power." *Gohld Realty Co.* v. *Hartford,* 141 Conn. 135, 146. The power may be delegated to another, and that agency is empowered to determine what property is necessary for the public use. *Northeastern Gas Transmission Co.* v. *Collins,* supra, 587–88. The plaintiff has been granted such powers by the legislature. *Connecticut Light & Power Co.* v. *Costello,* 161 Conn. 430, 436. It is clear that in the past when the plaintiff and other utilities exercised those delegated powers of eminent domain, the courts would not interfere with their discretionary authority to determine what was necessary for the public use. *Connecticut Power Co.* v. *Powers,* 142 Conn. 722, 725–26. It is further clear that this wide discretion also applied to property taken by condemnation for the public utility company's future needs. *Adams* v. *Greenwich Water Co.,* 138 Conn. 205, 213; *New Haven Water Co.* v. *Russell,* 86 Conn. 361, 369.

---

[1] In addition to the special defense, the defendant raises the defenses that the plaintiff failed to exhaust all reasonable efforts to obtain the easement by negotiation, that it failed to describe properly the easement, and that the Public Utility Environmental Standards Act is unconstitutional. In view of the court's decision on the plaintiff's authority to take the easement by condemnation, it is unnecessary to decide these other issues raised by the defendant.

The courts have allowed the utilities to exercise those powers of eminent domain without regard to environmental or social needs of the state, let alone the rights of the individual owner, save only the assurance that just compensation be paid to the owner. See *Gohld Realty Co.* v. *Hartford,* supra, 141; Lowenthal, "Prometheus, Meet the Power Facility Evaluation Council," 46 Conn. B.J. 379. It has long been held, however, that the decision of whether a property to be taken is necessary for the public use "is . . . open to judicial review to discover if it was unreasonable, or in bad faith, or an abuse of the power conferred, and . . . the appropriation of the property will be restrained if it be found that such was the character of the decision." *Water Commissioners* v. *Johnson,* 86 Conn. 151, 159; *Bahr Corporation* v. *O'Brion,* 146 Conn. 237, 250.

The legislature in 1971 severely circumscribed the powers of the utilities to take interests in land for their public purposes. In its concern for "the quality of the environment, the ecological, scenic, historic and recreational values of the state" and "the welfare and protection of the people of the state"; General Statutes § 16-50g; it adopted the Public Utility Environmental Standards Act (hereinafter, the act). General Statutes c. 277a. The act is designed to protect the public at large from the heretofore almost uncontrolled power of the utilities to determine what is in the public interest. Prior to the adoption of the act, "[o]pponents of the transmission lines found themselves up against a utility company that apparently could exercise the right of eminent domain to take whatever property it wanted for its power plants and transmission lines." Lowenthal, op. cit., 405.

The rules of statutory construction require the court, when construing legislation, to consider its

history and the purposes it was designed to serve. *Cassidy* v. *Tait*, 140 Conn. 156, 160. The provisions of the Public Utility Environmental Standards Act take precedence over those private acts granting the plaintiff the powers of eminent domain. "In the event of any conflict between the provisions of this chapter and any provisions of the general statutes, as amended, or any special act, this chapter shall take precedence." General Statutes § 16-50w.

The act restricts a utility company in exercising its powers of eminent domain in contemplation of constructing a facility (which includes an electric transmission line of a design capacity of sixty-nine kilovolts or more).[2] Section 16-50k of the General Statutes provides in part[3] that no utility "shall exer-

---

[2] " 'Facility' means: (1) An electric transmission line of a design capacity of sixty-nine kilovolts or more, including associated equipment; (2) a fuel transmission facility, except a gas transmission line having a design capability of less than two hundred pounds per square inch gauge pressure; (3) any electric generating or storage facility using any fuel, including nuclear materials, including associated equipment for furnishing electricity by electric utilities; (4) such substations, switchyards, and other facilities which may have a substantial adverse environmental effect as the council established under section 16-50j may, by regulation, prescribe; (5) such community antenna television towers and head-end structures, including associated equipment, which may have a substantial adverse environmental effect, as said council shall, by regulation, prescribe; and (6) such telecommunication towers more than one hundred feet in height, owned or operated by the state or a public service company, as defined in section 16-1, which may have a substantial adverse environmental effect, as said council shall, by regulation, prescribe." General Statutes (Rev. to 1979) § 16-50i (a).

[3] Excepted from the provisions of § 16-50k is subsection (b) of § 16-50z which does not apply to this case. Subsection (b) of § 16-50z provides for the following: "A person engaged in the transmission of electric power or fuel in the state may acquire real property, and exercise any right of eminent domain, granted by the general statutes or any special act therefor, for (1) relocation of a transmission facility or right-of-way required by a public highway project or other governmental action; (2) acquisition of additional rights or title to property already subject to an easement or other rights for electric transmission or distribution lines; or (3) widening a portion, not exceeding one mile in length, of a transmission right-of-way for reasons of safety or convenience of the public."

cise any right of eminent domain in contemplation
of . . . a facility . . . without having first obtained
a certificate of environmental compatibility and
public need . . . issued with respect to such facility
. . .'' by the Power Facility Evaluation Council
(hereinafter the PFEC).[4] In other words, the legis-
lature has imposed upon the PFEC the duty of first
determining environmental factors and the public
need before a utility can take property by condemna-
tion for a facility including a transmission line.

The plaintiff argues that the PFEC authorized a
transmission line and the taking of an easement of
150 feet in width for that purpose. It is correct that
the PFEC authorized a single transmission line and
in doing so took into consideration when making
its findings the environmental impact of the line.
It is also true that the plaintiff represented to the
PFEC in its application that the easement "would
generally be up to 150 feet wide."  As it pertains
to this case, however, the PFEC's authority under
the Public Utility Environmental Standards Act is
limited to the approval of a transmission line by
issuing a certificate of environmental compatibility
and public need.  General Statutes § 16-50k.  The
question of the individual owner's property to be
taken by the plaintiff was not at issue before the
PFEC, nor was there legislative authority for
the PFEC to make that determination. It is clear
that this court retains its traditional jurisdiction
to review the proposed taking of the individual's
property by the utility, including the width of the
proposed easement, to determine if the taking is
unreasonable, in bad faith or an abuse of process.
See *Bahr Corporation* v. *O'Brion,* 146 Conn. 237,
250-51.

[4] The application of § 16-50k is only for those facilities which the
PFEC has determined to have "a substantial adverse environmental
effect."

In the present case in order to accommodate the single transmission line which was authorized by the PFEC, a cleared area of only eighty feet in width is required, forty feet on each side of the transmission line. Some of the witnesses for the plaintiff attempted to justify an easement of 150 feet in width over the property of the defendant on the following grounds: (1) the plaintiff requires access to install the line,[5] (2) the additional width may be required for location flexibility,[6] (3) there was a need for a buffer zone.[7] Notwithstanding those claims, none of which have any validity to the defendant's property, it was admitted that the dominant reason for the easement of 150 feet was to accommodate a second transmission line in the future. The court concludes that the *sole* reason for an easement of the width of 150 feet through the property of the defendant is to accommodate a second transmission line to be constructed in the future.

[5] There was no evidence that such access was required upon the defendant's property. Even if there were such a problem, however, the plaintiff would be clearly exceeding its authority by taking a permanent easement. A temporary easement should be taken to facilitate construction. "The property which . . . [a utility] is privileged to take is restricted to that which will reasonably serve the public use; more than that would, in effect, be a taking for a private use and, hence, illegal as an abuse of power." *Northeastern Gas Transmission Co.* v. *Collins*, 138 Conn. 582, 593.

[6] This was contradicted by the plaintiff's own witnesses. They testified that the line would be consistently built 40 feet from the northerly edge of the easement, except for a small portion not located in the town of North Branford.

[7] This argument must also fail. If the plaintiff required a buffer zone for the southerly boundary, why would the same buffer zone not be required for the northerly boundary? Furthermore, the claim that the plaintiff must have the additional seventy feet on the southerly side in order to trim "dangerous trees" has no credibility. There is no evidence in the record that there are more dangerous trees to the south of the planned line than to the north. It is obvious that the plaintiff could not be acting in good faith if the proposed taking were based on these grounds. See *State* v. *Simmons*, 153 Conn. 351, 355.

Since the purpose of taking the additional seventy feet in width for the easement across the property of the defendant is to accommodate a second transmission line which has not been approved by the PFEC, this proposed condemnation violates the provisions of the Public Utility Environmental Standards Act. The taking of this easement for a future facility is therefore an abuse of the powers of eminent domain granted to the plaintiff by the legislature. See *Northeastern Gas Transmission Co.* v. *Collins,* 138 Conn. 582, 593.

Not only is the plaintiff, along with other utilities, prohibited from taking property by eminent domain for a future facility without approval of the PFEC, but it is also prohibited from acquiring property by purchase for a possible future transmission facility unless certain conditions are met. Subsection (a) of § 16-50z of the General Statutes sets forth the only basis upon which a utility may acquire property for a future transmission facility not approved by the PFEC. Subsection (a) provides as follows: "No person engaged in the transmission of electric power or fuel in the state shall acquire real property in contemplation of a possible future transmission facility, other than a facility for which the council has issued a certificate or one which the council has found will have no substantial adverse environmental effect, except as provided in regulations adopted by the council. Such regulations shall permit such acquisition (1) to avoid hardship for an owner of property; (2) to prevent substantial development along a possible transmission route until it becomes timely for the council to decide whether a certificate should be issued for a transmission facility along that route; and (3) to allow a modification of the boundaries between an existing right-of-way in fee and an adjoining parcel of land,

or of the location of an existing easement right-of-way across a parcel of land, for the convenience of the owner of such parcel. . . ."

Although the word "acquire" has previously been construed to be "broad enough to include property taken by condemnation proceedings as well as that obtained by purchase"; *Stevens* v. *New York, N.H. & H. R. Co.*, 83 Conn. 603, 610; its meaning in § 16-50z (a) is restricted to the obtaining of property by purchase. The court's conclusion is based on several reasons.

First, § 16-50k specifies the only manner by which a utility may exercise its rights to obtain property by eminent domain. In so specifying, the legislature specifically used the words "eminent domain." Second, § 16-50k grants an exception from the restrictions of taking by eminent domain for those situations which fall within the provisions of subsection (b) of § 16-50z, while no reference is made to subsection (a) of § 16-50z. Third, § 16-50z of the General Statutes makes a distinction between acquiring property and exercising the power of eminent domain. Subsection (a) specifically refers to "acquire" and subsection (b) refers to acquiring property and exercising "any right of eminent domain." Likewise, within subsection (b) "acquire" and "eminent domain" are distinguished. "To determine the meaning of a word used in a statute, we may look to related statutory provisions for guidance." *New Haven* v. *United Illuminating Co.*, 168 Conn. 478, 485. Finally, the legislative history of § 16-50z (a) indicates that the legislature intended "[to] acquire" to mean to purchase. Public Acts 1976, No. 76-359 § 6; 19 H. R. Proc., Pt. 4, 1976 Sess., pp. 1368–69. *Miller* v. *Board of Education*, 166 Conn. 189, 194. "The authority to condemn is to be strictly construed in favor of the owner and against the condemnor, and the prescribed method

of taking must be strictly pursued." *Simmons* v. *State,* 160 Conn. 492, 500; *Torrington* v. *Coles,* 155 Conn. 199, 201; *State* v. *McCook,* 109 Conn. 621, 630.

Even if the word acquire as used in § 16-50z (a) were construed to include the power of eminent domain, the plaintiff does not purport to have acted under this statute. The regulations promulgated thereunder provide that a statement of intent must be filed with the PFEC and that notice must be given to the parties of the proposed acquisition. Regs., Conn. State Agencies § 16-50z-1 through § 16-50z-4. Neither of those requirements was met. It is also clear that the plaintiff does not come within the provisions of any one of the situations which permit the acquisition of property by purchase or eminent domain for a possible future transmission facility under the provisions of either subsections (a) or (b) of § 16-50z.

The petition in its entirety must be denied for failure of the plaintiff to comply with the requirements of the Public Utility Environmental Standards Act. In the application it seeks the condemnation of the entire 150 foot easement; that specific relief requested must be denied. Even though it is clear that the plaintiff is authorized to proceed to purchase, or upon failure of a voluntary sale, to take by eminent domain an easement eighty feet wide, this court should not be put in the position of determining the exact metes and bounds of the easement; this is a matter within the discretion of the plaintiff subject to judicial review. Furthermore, the parties must be given an opportunity to negotiate the purchase of the eighty feet prior to allowing the plaintiff to take the property by eminent domain. See *West Hartford* v. *Talcott,* 138 Conn. 82, 89.

Accordingly, the petition of the plaintiff is hereby denied, and the matter dismissed.