[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Just east of the intersection of Washington Boulevard and West Park Place in downtown Stamford, sits the venerable Curley's Diner. The local eatery has been on that same piece of property since 1941 and has been owned and operated by the plaintiffs, Maria Aposporos and Ellen Begetis, since 1977. To this day, Curley's continues to cater to a diverse breakfast and lunch crowd of neighborhood residents and business persons. Beginning in approximately 1963, the Board of Representatives of Stamford (Board) originally approved a general plan of redevelopment under the Southeastern Quadrant (Extended) Urban Renewal Project (Plan). Over the ensuing years, the Plan: has been altered, amended and enlarged to include certain parcels of property and to forsake others. By the 1980's, the Plan started to consider, by extension, the area where Curley's Diner is located. The authorized body responsible for carrying out the Plan and all related projects is the Urban Redevelopment Commission of the City of Stamford (URC), a defendant[1] in this case. The URC conducts these purposes of business redevelopment pursuant to General Statutes § 8-124 et seq., (the Redevelopment and Urban Renewal Act).
More specifically, in 1988, the URC proposal, Resolution 1819, was adopted by the Board, amending the Plan. This measure would now incorporate the plaintiff's property in the underlying redevelopment, including Curley's Diner. In 1997, the URC proposed a Land Disposition Agreement (LDA) whereby the parcels identified in Resolution 1819 would be sold to Corcoran Jennison/Berkeley Partners, Inc., a Massachusetts CT Page 13191 corporation, for redevelopment. This Corcoran Jennison LDA never came to fruition however, because the URC had to negotiate necessary changes, including the identity of the redeveloper. The URC then submitted its LDA with Park Square West, which the Board did not object to or disapprove of, and the agreement was executed. Pursuant to the Plan, Resolution 1819, the Park Square West LDA and its statutory authority, the URC offered to purchase the plaintiff's property, including Curley's Diner, about a year ago in October 1999. Two months later, in December 1999, the defendants' commenced condemnation proceedings and the plaintiffs commenced proceedings for injunctive relief, on December 28, 1999, resulting in the current litigation.
"[A] party seeking injunctive relief has the burden of alleging and proving irreparable harm and the lack of an adequate remedy at law." (Internal quotation marks omitted.) Branch v. Occhionero, 239 Conn. 199,207, 681 A.2d 306 (1996). "It is clear that the power of equity to grant injunctive relief may be exercised only under demanding circumstances." (Internal quotation marks omitted.) Anderson v. Latimer Point ManagementCorp., 208 Conn. 256, 262, 545 A.2d 525 (1988). "The issuance of an injunction rests within the sound discretion of the trial court. . . . In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from the interference by injunction." (Citations omitted; internal quotation marks omitted.) Id. It is also clearly well established that injunctive relief is an appropriate remedy when challenging the taking of a property by eminent domain. Bahr Corp. v. O'Brion, 146 Conn. 237, 149 A.2d 691
(1959). "The decision of the condemnor that a necessity exists for the taking of particular property is one open to judicial review to discover if it was unreasonable, or in bad faith, or an abuse of the power conferred, and . . . the appropriation of the property will be restrained if it is found that such was the character of the decision. . . ." (Citations omitted; internal quotation marks omitted.) Id., 250.
The plaintiffs, as a matter of procedure, contend that there are some technical statutory defects to be charged against the defendants thereby providing justification for an injunction. The court has considered the issues as claimed by the plaintiffs. First, the plaintiffs argue that the URC did not act within a reasonable time and did not specify a time for acquisition under General Statutes § 8-128. The court notes however, that there is no indication or authority for the 1991 amendment to be applied retroactively to the 1988 Board approval and that, more significantly, the statutory language of the section is directory rather than mandatory. See Office of Consumer Counsel v. Department of PublicUtility, 252 Conn. 115, 122, 742 A.2d 1257 (2000) ("We have consistently held that `may' is directory rather than mandatory."). Second, the plaintiffs complain that the Board did not approve, in some official CT Page 13192 manner or capacity, the Park Square West LDA before it was executed. The transcript, however, is replete with evidence that the Board accepted the modified LDA, especially in light of the fact that the Board compelled the URC to renegotiate and make such modifications. Moreover, it is notable to this court that the Board has in no fashion objected, within these proceedings, to the forward progress of the Plan, the Park Square West LDA and the redevelopment project. Third, the plaintiffs allege that the URC's authority to complete the project by taking and condemning the plaintiffs' property, including Curley's Diner, has been extinguished by the passing of a March 4, 2000 deadline. This claim is not supported by the record which shows that: (1) D'Andrea, J., issued an order granting a stay of the March 4, 2000 deadline; and (2) the Board recently passed a resolution extending the Plan's completion date to July 5, 2004, (which included Curley's Diner).
Consequently, the plaintiffs' assertions of lack of statutory compliance provide neither the irreparable harm nor the inadequate remedy of law bases necessary for the granting of an injunction. The URC's proposed acquisition of the plaintiff's property is found not to be unreasonable, not to be in bad faith, nor is it an abuse of power. "It is fundamental that the state government or any properly designated agency thereof may take private property under its power of eminent domain, if the taking is for a public use and if just compensation is paid therefor." Gohld Realty Co. v. Hartford, 141 Conn. 135, 141, 104 A.2d 365
(1954). "In this State it is settled that public use means public usefulness, utility or advantage, or what is productive of general benefits: so that any appropriating of private property by the State under its right of eminent domain for purposes of great advantage to the community, is a taking for public use." Id. "A public use defies absolute definition, for it changes with varying conditions of society, new appliances in the sciences, changing conceptions of the scope and functions of government, and other differing circumstances brought about by an increase in population and new modes of communication and transportation . . . (Citations omitted.) Katz v. Brandon, 156 Conn. 521,532, 245 A.2d 579 (1968). "Courts as a rule, instead of attempting judicially to define a public as distinguished from a private purpose, have left each case to be determined on its own peculiar circumstances. Promotion of the public safety and general welfare constitutes a recognized public purpose. If the expenditure of public funds will promote the welfare of the community, it is for a public purpose . . . The modern trend of authority is to expand and liberally construe the meaning of `public purpose.' The test of public use is not how the use is furnished but rather the right of the public to receive and enjoy its benefit." Id.
A current policy statement of such public purpose is found at the CT Page 13193 forefront of the Redevelopment and Urban Renewal Act, in General Statutes § 8-124.[2] There is no legitimate issue of whether the URC's proposed taking of the plaintiffs' property is public in nature, use and purpose. More than sufficient evidence has been presented that the project would encompass a specified amount of affordable housing. See AvalonbayCommunities, Inc v. Orange, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 065826 (February 9, 2000, Curran,J.). In particular, of the 370 projected new apartment units, 20% would be designated for moderate income tenants and another 10% would be allotted for elderly occupants who also fall below median income levels. In addition, the desperately needed parking; see Barnes v. New Haven,140 Conn. 8, 98 A.2d 523 (1953); and attendant retail fall well within the legal determinations of public use and purpose.
 BLIGHT
The real question remaining is the one regarding blight, and whether the condition of the area of plaintiffs' property, including Curley's Diner, can be assessed as such. The plaintiffs assert that times and circumstances have changed, and as a consequence the corner and intersection of Washington Boulevard and West Park Place, as well the diner property itself, can no longer be considered as deteriorated or deteriorating. Alternatively, the plaintiffs contend, at the very least, that a more current finding on blight is required. The defendants, the URC and Stamford, maintain that any blighted conditions have been improved or eradicated by virtue of administering the Plan and renewing the area over the years. Furthermore, the defendants avow that they should be entitled to finish the nearly completed Plan and corresponding redevelopment project and that taking Curley's Diner is necessary for that purpose.[3]
In Avalonbay Communities, Inc v. Orange, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 065826 (February 9, 2000, Curran, J.), the court stated: "Thus, for instance, the Ghould and Katz cases address the condemnation of sites that are in economically blighted areas. While eminent domain in both of those cases was used to specifically remedy these urban blights, neither case addressed a situation, where, as in the present case, there is no evidence that the site is blighted but, on the contrary, suggests that the land (at least the site) is earmarked for new development and use.
"Regarding this difference, it is noteworthy that cases from other jurisdictions suggest that the taking of land by eminent domain for a private business use is not a public purpose in cases where there is no evidence that the land in question is itself blighted. See Merril v. Cityof Manchester, 127 N.H. 234, 499 A.2d 216 (N.H. 1985), see Miller v. CityCT Page 13194of Tacoma, 61 Wash.2d 374, 378 P.2d 464 (1963). In those situations, however, where the character of the condemned land is not particularly focused on by the courts, there is a mixture of outcomes as to the public use of a project similar to the one at hand. Case law from foreign jurisdictions is, therefore, not entirely helpful in clarifying or predicting Connecticut law as the numerous decisions reflect often contradictory outcomes based not only on unique sets of facts but also on the particular language of the appropriate statute authorizing eminent domain."
The defendants are accurate when, in their briefs, they observe that the plaintiffs cite no law precisely on point that stands for the proposition that the court can find some eradication or even significant eradication of blight to provide for the enjoining of the taking of property or renders unnecessary the need to complete redevelopment. Notably, the defendants do present valid arguments, via Broadriver, Inc.v. Stamford, 158 Conn. 522, 265 A.2d 75 (1969), cert. denied, 398 U.S. 938,90 S.Ct. 1841, 26 L.Ed.2d 270 (1970); see also Fishman v. Stamford,159 Conn. 116, 120, 267 A.2d 443 (1970), cert. denied, 399 U.S. 905,90 S.Ct. 2197, 26 L.Ed.2d 560 (1971). Indeed both of these cases involve the 1963 Plan for redevelopment in Stamford. In Broadriver, which dealt with facts not unlike the present case, the court stated: "The plan as originally conceived did not include the plaintiff's land. The plaintiff's property, however, is on . . . a strategic corner of the redevelopment area. . . ." Broadriver, Inc. v. Stamford, supra,158 Conn. 532. "The plaintiff's property is vital to the plan. . . ." Id., 533. In that case, all the local legislation involved approved of incorporating the condemnee's property and taking it for purposes of the extended development plan. Aside from the meaning derived from General Statutes § 8-124, "blighted area" has also been defined as: "An unaesthetic and uneconomic section; and area of such kind that razing all the buildings will serve a public purpose, even though a few of them maynot be substandard or blighted. Verlishka v. Nashua, 99 N.H. 161,106 A.2d 571, 44 A.L.R.2d 1406." Ballentine's Law Dictionary (3d Ed. 1969). The court finds that Curley's Diner by itself is neither unaesthetic nor an uneconomic use of the land. See also ProtectHamden/North Haven v. Planning and Zoning, 220 Conn. 527, 600 A.2d 757
(1991) (unsightly lot an eyesore whereas development proposal for shopping retail a more aesthetically pleasing site plan with evidence of economic benefit to town).
"It is well settled that courts are not to substitute their judgment for that of the board, and that decisions of local boards will not be disturbed as long as an honest judgment has been reasonably and fairly made after a full hearing. . . . The court's function is to determine on the basis of the record whether substantial evidence has been presented CT Page 13195 to the board to support its findings." (Citations omitted; internal quotation marks omitted.) Conetta v. Zoning Board of Appeal,42 Conn. App. 133, 137-38, 677 A.2d 987 (1996). Determinations that were made forty, twenty, and even twelve years ago seriously undermine confidence in making reliable condemnation decisions, Did the Board have substantial evidence of the most recent vintage when it came to the blight, determination so as to conduct a full hearing and render an honest, reasonable and fair judgment as to Curley's Diner? Indeed, such a factual finding, within the equitable injunctive powers of a court can be decided by a jury. See General Statutes § 52-218. Notwithstanding the court's concern, a reasonable inference can be made based upon the extensions of time to complete the current plan that the point of urban blight was recently considered. If new factual findings regarding blight are needed, it is within the Board's discretion, not that of the court. The court has no discretion on factual findings regarding "blighted areas."
Added difficulty arises here because the plaintiffs' business, with all its character, is somewhat unique. "While we recognize that the location of a restaurant may be an important component of its value as a going concern, we think that its name, its reputation for good food and quality of service, the expertise of its management, are equally important components of value." West Haven Sound Development Corp. v. West Haven,201 Conn. 305, 325, 514 A.2d 734 (1986). Certainly, there is no dispute that Curley's Diner has enduring intrinsic value as a well-known eating establishment due to its long, continuing operation and customer base. See Connecticut National Bank v. Deep River Inn, Superior Court, judicial district of Middlesex, Docket No. 62922 (June 3, 1993, Arena, J.).
 CONCLUSION
The court finds that the plaintiffs have an adequate remedy at law and that their claims for injunctive relief, upon the current record, is denied.
RYAN, J.