******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELECTRICAL CONTRACTORS, INC. *v.* INSURANCE
COMPANY OF THE STATE OF PENNSYLVANIA
(SC 19105)

Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued January 9—officially released December 16, 2014*

*Steven B. Kaplan*, with whom was *Paul R. Fitzgerald*, for the appellant (plaintiff).

*Todd R. Regan*, for the appellee (defendant).

*Matthew M. Horowitz* and *Susan Evan Jones* filed a brief for the Surety and Fidelity Association of America as amicus curiae.

*Opinion*

PALMER, J. Under General Statutes §§ 49-41 through 49-43, popularly known as the "Little Miller Act" (act),[1] a general contractor on a public works construction project must provide a payment bond with surety to the state or governmental subdivision guaranteeing payment to those who supply labor and materials to the project, and any person who has performed work or supplied materials for the project, but has not been paid for such materials or work, may enforce his right to payment under the payment bond. The dispositive issue in this case, which comes to us upon our acceptance of certified questions from the United States District Court for the District of Connecticut pursuant to General Statutes § 51-199b (d),[2] is whether a surety on a public construction project, which fails either to pay or to deny a notice of claim within ninety days, as required by General Statutes § 49-42 (a),[3] thereby waives any substantive defenses and becomes automatically liable for the full amount of the claim. We answer that question in the negative.

The record certified by the District Court contains the following undisputed facts and procedural history. The Morganti Group, Inc., was the general contractor on the Newtown High School renovations and expansion project. Morganti entered into a subcontract with the plaintiff, Electrical Contractors, Inc., for the latter to provide labor, equipment, and materials relating to the electrical work for the project. In July, 2009, pursuant to § 49-41 (a),[4] Morganti, as principal, obtained from the defendant, Insurance Company of the State of Pennsylvania, a $33.7 million labor and materials payment surety bond on the project.

In April, 2011, the plaintiff submitted to Morganti a request for equitable adjustment to the subcontract price in the amount of $751,190.63 to recoup additional costs allegedly incurred as a result of Morganti's deficient performance. In May, 2011, the plaintiff updated and adjusted its claim to $746,300.25. Morganti did not respond substantively to these claims.

On June 3, 2011, the plaintiff sent the defendant notice of its claim via certified mail, pursuant to § 49-42 (a). The defendant received the notice of claim on June 10, 2011. On June 13, 2011, the defendant wrote to the plaintiff acknowledging receipt of the claim and requesting additional information to substantiate the claim. By letter dated July 1, 2011, the plaintiff responded to this request and provided the requested documentation, notwithstanding its stated belief that it had already fully complied with the statutory notice requirements of § 49-42. The defendant responded by letter dated July 6, 2011, acknowledging receipt of the plaintiff's further documentation. In that letter, the defendant indicated that it was immediately taking the

matter up with Morganti to ascertain the latter's position on the claim, and that it would be in contact with the plaintiff in due course.

On September 16, 2011, the plaintiff commenced an action in the United States District Court for the District of Connecticut, claiming, inter alia, that: (1) the defendant was obligated to pay the full sum of $746,300.25 allegedly due under the payment bond; and (2) the defendant, acting in bad faith and without legal basis, had failed to (a) make any payment under the surety bond, (b) assert a good faith dispute, or (c) serve notice on the plaintiff denying liability for the unpaid portions of the claim. The parties subsequently filed cross motions for summary judgment. In its motion, the plaintiff alleged that because the defendant had failed to make payment, dispute the claim in good faith, or deny liability on the claim within the ninety day notice period provided by § 49-42 (a), the defendant had waived any substantive defenses and the plaintiff was therefore entitled to judgment in the full amount of the claim. The defendant disagreed with this interpretation of the statute, contending instead that a surety's failure to satisfy the ninety day deadline imposed by § 49-42 (a) should merely be deemed an exhaustion of remedies entitling a claimant to bring an action on its claim.[5]

The District Court determined that the proper resolution of the parties' claims turns on the correct interpretation of § 49-42 (a). The District Court further observed that the question of law presented by the parties' motions involves a matter of public interest for which there is no controlling appellate decision, constitutional provision, or state statute. Accordingly, the District Court certified the following two questions of law to this court, which we accepted: "(1) (a) Is a surety's failure to meet the [ninety] day deadline under [§] 49-42 deemed to be an exhaustion of remedies entitling claimants to bring suit for an adjudication of their claim or (b) [d]oes the failure to meet the [ninety] day deadline operate as a waiver of a surety's defenses directing the [c]ourt to enter judgment for the claimant in the full amount of the claim?" and "(2) Does a surety's request for further information to substantiate a claim constitute: (a) a 'denial' of the claim under [§] 49-42, or (b) a 'good faith dispute' of the claim under [§] 49-42?" The parties suggest, and we agree, that our analysis should begin with part (1) (b) of the certified question, because the crux of their dispute is whether a surety's failure to satisfy its notice requirements under § 49-42 (a) constitutes a waiver of its substantive defenses and a forfeiture of its right to contest a surety bond claim.[6] We conclude that a surety's failure to make payment on or serve notice denying liability on a claim under § 49-42 (a), within that provision's ninety day deadline, is tantamount to a denial of the claim and does not constitute a waiver of the surety's right to defend the claim on the merits. We therefore answer part (b) of the

first question in the negative and, accordingly, need not address the remaining questions certified by the District Court, except insofar as those matters bear on our resolution of question (1) (b).

Resolution of this question involves an issue of statutory interpretation over which we exercise plenary review. *Parrot* v. *Guardian Life Ins. Co. of America*, 273 Conn. 12, 18, 866 A.2d 1273 (2005). We therefore begin our analysis with the language of § 49-42 (a); see id., 19; General Statutes § 1-2z;[7] which provides in relevant part: "Any person who performed work or supplied materials for which a requisition was submitted to . . . the awarding authority and who does not receive full payment for such work or materials within sixty days of the applicable payment date provided for in subsection (a) of section 49-41a . . . may enforce such person's right to payment under the bond by serving a notice of claim on the surety that issued the bond and a copy of such notice to the contractor named as principal in the bond not later than one hundred eighty days after the last date any such materials were supplied or any such work was performed by the claimant. . . . *Not later than ninety days after service of the notice of claim, the surety shall make payment under the bond and satisfy the claim, or any portion of the claim which is not subject to a good faith dispute, and shall serve a notice on the claimant denying liability for any unpaid portion of the claim.* . . . If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the Superior Court for such sums and prosecute the action to final execution and judgment. . . ." (Emphasis added.) General Statutes § 49-42 (a).

On its face, the statute contains no default provision and nowhere provides that a surety waives its right to raise substantive defenses or is subject to automatic forfeiture if it fails to satisfy the ninety day response requirement. Indeed, § 49-42 (a) does not expressly impose *any* penalty in the event of a surety's noncompliance. Nevertheless, the plaintiff maintains that the legislature's repeated use of the term "shall" indicates that the duty of the surety to timely pay or deny a claim is mandatory in nature, and hence that failure to do so necessarily renders a subsequent denial null and void. The defendant, by contrast, asserts that the relevant statutory language is merely directory,[8] and therefore that failure to deny a claim within ninety days does not automatically result in waiver or forfeiture. The defendant further contends that it would be inappropriate for the courts to read into the act a penalty provision that the legislature declined to impose expressly. See *Ghent* v. *Planning Commission*, 219 Conn. 511, 515, 594 A.2d 5 (1991) (court may not "read into clearly expressed legislation provisions which do not find expression in its words" [internal quotation marks omitted]). We agree with the defendant's construction of

the statute.

Although "we generally will not look for interpretative guidance beyond the language of the statute when the words of that statute are plain and unambiguous . . . our past decisions have indicated that the use of the word shall, though significant, does not invariably create a mandatory duty."[9] (Internal quotation marks omitted.) *State* v. *Trahan*, 45 Conn. App. 722, 730, 697 A.2d 1153, cert. denied, 243 Conn. 924, 701 A.2d 660 (1997). Indeed, we frequently have found statutory duties to be directory, notwithstanding the legislature's use of facially obligatory language such as "shall" or "must." See, e.g., *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 788–94, 961 A.2d 349 (2008) (employer's use of improper form did not invalidate wage deductions); *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 462–67, 692 A.2d 742 (1997) (assessor's failure to provide notice within thirty days of hearing did not invalidate assessment); *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 122, 676 A.2d 825 (1996) (failure to hold executive session did not require that arbitrators' award be vacated); *Katz* v. *Commissioner of Revenue Services*, 234 Conn. 614, 617, 662 A.2d 762 (1995) (commissioner's failure to act on refund claim within ninety days did not preclude denial of claim); *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 446, 623 A.2d 1007 (1993) (zoning board of appeals not subject to automatic approval doctrine on basis of its failure to hold public hearing within statutory time limit); *Jones* v. *Mansfield Training School*, 220 Conn. 721, 726–28, 601 A.2d 507 (1992) (use of word "shall" was directory and did not create exclusive remedy for injured worker); *Ghent* v. *Planning Commission*, supra, 219 Conn. 516 and n.4 (commission's failure to file transcript of hearing with court did not invalidate appeal); *Tramontano* v. *Dilieto*, 192 Conn. 426, 433, 472 A.2d 768 (1984) (acts of public official performed at time beyond limit prescribed are nonetheless effective); *Broadriver, Inc.* v. *Stamford*, 158 Conn. 522, 529–30, 265 A.2d 75 (1969) (redevelopment agency's failure to file return within ninety days of notice to property owner did not invalidate statutory taking), cert. denied, 398 U.S. 938, 90 S. Ct. 1841, 26 L. Ed. 2d 270 (1970); *Gallup* v. *Smith*, 59 Conn. 354, 356–58, 22 A. 334 (1890) (that judge of adjoining district was cited in by disqualified judge, rather than by clerk, did not invalidate subsequent appointment of trustee); see also J. Evans, "Mandatory and Directory Rules," 1 Legal Stud. 227, 252–53 (1981) (arguing for presumption in favor of treating ambiguous rules as directory because legislature always has option to expressly identify rules as mandatory and holding rules directory provides courts greater flexibility in deciding consequences of breach). We therefore look to other relevant considerations, beyond the legislature's use of the term "shall," to ascertain

the meaning of the statute.

Our prior cases have looked to a number of factors in determining whether such requirements are mandatory or directory. These include: (1) whether the statute expressly invalidates actions that fail to comply with its requirements or, in the alternative, whether the statute by its terms imposes a different penalty; (2) whether the requirement is stated in affirmative terms, unaccompanied by negative language; (3) whether the requirement at issue relates to a matter of substance or one of convenience; (4) whether the legislative history, the circumstances surrounding the statute's enactment and amendment, and the full legislative scheme evince an intent to impose a mandatory requirement; (5) whether holding the requirement to be mandatory would result in an unjust windfall for the party seeking to enforce the duty or, in the alternative, whether holding it to be directory would deprive that party of any legal recourse; and (6) whether compliance is reasonably within the control of the party that bears the obligation, or whether the opposing party can stymie such compliance.[10] See, e.g., *Weems* v. *Citigroup, Inc.*, supra, 289 Conn. 790–91; *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 744, 746, 865 A.2d 428 (2005); *Katz* v. *Commissioner of Revenue Services*, supra, 234 Conn. 617–19; *Broadriver, Inc.* v. *Stamford*, supra, 158 Conn. 529–31; *Kindl* v. *Dept. of Social Services*, 69 Conn. App. 563, 568, 795 A.2d 622 (2002). Each of these factors supports the defendant's interpretation of the statute.

The first two factors are addressed to the statutory text. "A reliable guide in determining whether a statutory provision is . . . mandatory is whether the provision is accompanied by language that expressly invalidates any action taken after noncompliance with the provision." *Katz* v. *Commissioner of Revenue Services*, supra, 234 Conn. 617. By contrast, where a statute by its terms imposes some other specific penalty, it is reasonable to assume that the legislature contemplated that there would be instances of noncompliance and did not intend to invalidate such actions. Id., 618; *Ghent* v. *Planning Commission*, supra, 219 Conn. 515–16. "Furthermore, a requirement stated in affirmative terms unaccompanied by negative words . . . generally is not viewed as mandatory." *Teresa T.* v. *Ragaglia*, supra, 272 Conn. 744.

In the present case, the statute does not provide any express penalty for a surety that fails to comply with the ninety day response requirement. This "lack of a penalty provision or invalidation of an action as a consequence for failure to comply with the statutory directive is a significant indication that the statute is directory." *Weems* v. *Citigroup, Inc.*, supra, 289 Conn. 791. That conclusion is bolstered here by the fact that § 49-42 (a), which imposes the ninety day response requirement, *does* include several express penalty provisions. The

statute (1) awards costs to the prevailing party in a legal action, (2) allows interest upon any amount recovered, and (3) permits the court to award attorney's fees if it appears that any claim, denial, or defense is without substantial basis in fact or law. General Statutes § 49-42 (a). The fact that the legislature provided for such penalties, but did not elect to impose any express penalty on a surety that fails to comply with the ninety day response requirement, counsels against reading such a draconian penalty as a judicial default provision into the statute. Moreover, although the language in § 49-42 establishing the surety's response requirement begins with the phrase "[n]ot later than ninety days after service of the notice of claim," the duty of the surety to pay or to deny a claim prior to the statutory deadline is otherwise framed solely in affirmative terms, with no language expressly prohibiting a surety from denying a claim after ninety days have passed. The text and structure of the statute, then, strongly suggest that the legislature intended the response requirement to be directory.

The next factor we consider "in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance [as opposed to] a matter of convenience. . . . If it is a matter of substance, the statutory provision is [generally held to be] mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory . . . ." (Internal quotation marks omitted.) *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, supra, 237 Conn. 120. In the present case, the defendant contends that the purpose of the ninety day response period is simply to create order and facilitate the claim process by providing a brief opportunity for a surety to evaluate and potentially resolve a claim prior to the initiation of litigation. The plaintiff, on the other hand, maintains that the ninety day response deadline is substantive, and hence mandatory, because, in its view, an essential purpose of the act is to guarantee that subcontractors who perform work on public construction projects in Connecticut receive *prompt* payment for their labor and materials. We agree with the defendant.

We acknowledge that where the legislature has imposed a statutory deadline we may assume that it intends for the action in question to be accomplished expeditiously. Nevertheless, the inclusion of a relatively brief deadline does not necessarily imply that expediency is an essential purpose of the statute. Indeed, in a number of cases, both this court and the Appellate Court have concluded that such statutory deadlines are directory where there is no express legislative guidance to the contrary and no indication that the legislature intended the deadline to be jurisdictional. Compare

*United Illuminating Co.* v. *New Haven*, supra, 240 Conn. 463 (requirement that assessor provide notice of assessment within thirty days of hearing held directory), *Katz* v. *Commissioner of Revenue Services*, supra, 234 Conn. 617 (requirement that commissioner act on tax refund claim within ninety days held directory), *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, supra, 225 Conn. 446 (zoning board of appeals not subject to automatic approval doctrine on basis of its failure to hold public hearing within statutory time limit), *Broadriver, Inc.* v. *Stamford*, supra, 158 Conn. 529–30 (requirement that redevelopment agency return notice of proposed taking to clerk of Superior Court within ninety days held directory), and *In re Adrien C.*, 9 Conn. App. 506, 509, 512, 519 A.2d 1241 (requirement that commissioner file petition to terminate parental rights at least ninety days prior to expiration of child's commitment held directory), cert. denied, 203 Conn. 802, 522 A.2d 292 (1987), with *Vartuli* v. *Sotire*, 192 Conn. 353, 359, 472 A.2d 336 (1984) (compliance with sixty-five day decision requirement held mandatory where statute provided that approval would be presumed in absence of timely commission decision to contrary).

The legislative history of the act is instructive in this regard. Prior to 1987, § 49-42 (a) provided in relevant part: "Every person who has furnished labor or material in the prosecution of the work provided for in such contract . . . and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which the claim is made, *has the right to sue on the payment bond* [required under § 49-41] for the amount . . . unpaid . . . and to prosecute the action to final execution and judgment for the sum or sums justly due him. . . ." (Emphasis added.) General Statutes (Rev. to 1985) § 49-42 (a). The essential purpose of the act, then, was to provide a remedy at law for subcontractors and suppliers on public construction contracts who cannot avail themselves of mechanic's liens to obtain payments improperly withheld. *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 714, 687 A.2d 506 (1997); R. Robinson, "Connecticut's Little Miller Act: A Primer," Connecticut Lawyer, Vol. 13, No. 5 (February 2003), p. 22.

The 1987 amendments to the act did nothing to alter this legal remedy. See Public Acts 1987, No. 87-345 (P.A. 87-345). The amendments merely extended the prematurity period during which the parties may resolve the dispute among themselves prior to the commencement of litigation, and imposed a formal structure for this process: adding the requirement that the claimant provide the surety with notice of the claim and a detailed description of the project, and that the surety in turn notify the claimant of its response. Noth-

ing in the legislative history suggests that the legislature viewed the new ninety day response requirement as an essential, substantive component of the act, as amended, or that it intended to impose thereby a judicial default provision.[11] If anything, the 1987 amendments support the opposite conclusion, as the legislature at that time elected to impose various other penalty provisions designed to encourage parties to resolve their disputes promptly, without the need for litigation, but did not impose the penalty that the plaintiff seeks. In fact, in 2006, the legislature rejected proposed language that would have amended § 49-42 to provide expressly that "[f]ailure of the surety to either pay or identify the portion of the claim that is subject to a good faith dispute within such ninety-day period shall operate as a waiver of such surety's defenses to the entire claim." Raised Senate Bill No. 493, 2006 Sess. That the "compromise" amendment the legislature ultimately adopted omitted the proposed penalty provision; see 49 H.R. Proc., Pt. 15, 2006 Sess., p. 4680, remarks of Representative Christopher R. Stone; provides further support for the defendant's contention that the legislature has never viewed the surety's duty to respond within ninety days as an essential component of the act.

We next consider whether holding a requirement to be mandatory would result in an unjust windfall for the party seeking to enforce the duty or, in the alternative, whether holding it to be directory would deprive that party of any legal recourse. Compare *Weems* v. *Citigroup, Inc.*, supra, 289 Conn. 794 (treating rule requiring use of authorized forms for payroll deductions as mandatory would result in unwarranted windfall for employees), with *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 692–93, 674 A.2d 1300 (1996) (time limits held mandatory where neither party could take further legal action until commission had made finding of reasonable cause or no reasonable cause); see also J. Evans, supra, 1 Legal Stud. 245 (purpose of mandatory/directory distinction is to avoid injustice and honor purposes of statute while not imposing unreasonably harsh consequences for trivial breaches). In the present case, we agree with the defendant and the amicus supporting the defendant's position that this balancing weighs heavily in favor of treating the ninety day response period as directory.

At oral argument, the plaintiff conceded that when a surety first receives notice of a claim under a payment bond, the surety may have little, if any, familiarity with the specifics of the project, and in particular is likely to be ignorant as to the details and history of the dispute between its principal and the claimant. Moreover, the statute itself requires only that the claimant provide the surety with a "notice of claim [stating] with substantial accuracy the amount claimed and the name of the party for whom the work was performed or to whom the materials were supplied, and [providing] a detailed

description of the bonded project for which the work or materials were provided." General Statutes § 49-42 (a). There is no requirement, for example, that the claimant provide with its notice of claim any relevant bids, quotes, estimates, project specifications, take-off sheets, labor records, purchase orders, invoices, job diaries, cost reports, or other documentation of the dispute.

Accordingly, upon receiving notice, the surety has just ninety days to educate itself as to the particulars of the project, investigate the claim, collect all relevant documentation, and then determine which portions of the claim to pay and which to deny. To accomplish these tasks, the surety is heavily dependent on the expeditious cooperation of its principal and the claimant, who will typically possess most, if not all, of the relevant information and documentation. Furthermore, if a surety were to prematurely deny a claim without having completed a thorough and adequate investigation, it could be found to have acted "without substantial basis in fact or law," thereby incurring liability for the claimant's attorney's fees. General Statutes § 49-42 (a). Under these circumstances, it would be unreasonable to hold that a surety that engages in a good faith investigation, but is unable to reach an educated conclusion before ninety days have elapsed, necessarily waives any substantive defenses to the claim and becomes obligated to pay it in full, regardless of how exaggerated, baseless, or even fraudulent it may be. We perceive no legislative intent to afford claimants that sort of undeserved windfall.

On the other side of the scale, we also perceive no prejudice to a claimant who, at the end of the ninety day response period, receives neither a yea nor a nay from the surety. As we have noted, the notice procedure that the legislature created in the 1987 amendments to the act; P.A. 87-345; did not replace or supplant the primary remedy available to the claimant, which is the right to "bring action upon the payment bond in the Superior Court . . . and prosecute the action to final execution and judgment." General Statutes § 49-42 (a). Rather, the ninety days simply provide a brief window during which the parties have an opportunity and are encouraged to try to resolve the claim without the need for litigation. If the surety has not agreed to pay the claim within that time period—whether the surety expressly denies the claim or, as in the present case, simply does not respond substantively to the claim— this window of opportunity has closed, and the position of the claimant is exactly the same in either case: it is free to proceed with litigation in order to enforce its rights.[12]

Finally, our conclusion that the equities favor treating the response requirement in § 49-42 (a) as directory rather than mandatory is bolstered by the fact that

prompt compliance may not be within the complete control of the surety. As the amicus explains, the surety is caught in the middle between the claimant and the principal; it cannot compel either party to provide the information and documentation it needs to determine the relevant facts, resolve the dispute, and evaluate the validity of the claim. Moreover, the surety may need to solicit additional information from third parties such as the project owner, the architect, or other contractors and vendors associated with a project. Their cooperation also may not be timely forthcoming.

At the same time, the claimant may be in a position to stymie the ability of the surety to investigate its claim expeditiously. In the present case, for instance, the defendant contends that the plaintiff repeatedly failed to provide full documentation of its allegations. That factual dispute is not before us, and, in any event it is not material to the purely legal questions the District Court has certified. As a general matter, however, a claimant subcontractor will often be the party best positioned to document the work and materials that it contributed to a project, as well as any losses it allegedly suffered as a result of the principal's misconduct. Accordingly, to hold that a claimant is automatically entitled to full payment on all of its bond claims whenever a surety is unable to fully assess those claims within ninety days would create a strong incentive for claimants to withhold key information and otherwise fail to cooperate with the surety. We do not believe that the legislature intended to open the door to that sort of mischief. See *Broadriver, Inc.* v. *Stamford,* supra, 158 Conn. 530–31 (reasoning that treating ninety day deadline for statutory taking as mandatory would allow property owner to defeat taking through dilatory legal tactics).

Considering all of the relevant factors, then, including the text, legislative history, and purpose of the act, we conclude that the ninety day response requirement contained in § 49-42 (a) is directory, rather than mandatory, and that the legislature did not intend that a surety that fails to pay or to deny a claim by the statutory deadline thereby waives any substantive defenses and forfeits its right to contest the merits of the claim. We next consider the three additional arguments the plaintiff makes in support of its interpretation of § 49-42 (a), none of which we find persuasive.[13]

First, the plaintiff contends that it would be unfair to hold that a surety's duty to respond to a claim under § 49-42 is merely directory when the claimant's corresponding obligations under that statute, to provide notice of a claim and to file an action in a timely manner, have been held to be mandatory. See *Millgard Corp.* v. *White Oak Corp.*, 224 F. Supp. 2d 425, 429–32 (D. Conn. 2002) (granting summary judgment for surety on basis of claimant's failure to comply with 180 day notice

requirement of § 49-42 [a]);[14] *American Masons' Supply Co.* v. *F. W. Brown Co.*, 174 Conn. 219, 224, 384 A.2d 378 (1978) (action brought after one year limitations period established by § 49-42 [b] was time barred); *Wickes Mfg. Co.* v. *Currier Electric Co.*, 25 Conn. App. 751, 759, 596 A.2d 1331 (1991) (same). Although the plaintiff's suggestion that claimants and sureties should be treated alike with regard to their respective statutory deadlines is facially appealing, it overlooks the significant distinction between statutes of limitations, which govern when a legal action may be brought, and deadlines of other sorts. See *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 172–73, 659 A.2d 138 (1995). The purpose of a statute of limitations is to prevent stale claims and unnecessary delays in the presentation of issues. *Austin-Casares* v. *Safeco Ins. Co. of America*, 310 Conn. 640, 658, 81 A.3d 200 (2013). A plaintiff's timely filed action provides notice to the defendant and ensures that the defendant does not find itself "in a situation where, because of the lapse of time, [the defendant] is unable to gather facts, evidence, and witnesses necessary to afford . . . a fair defense." (Internal quotation marks omitted.) *Nichols* v. *Lighthouse Restaurant, Inc.*, 246 Conn. 156, 166, 716 A.2d 71 (1998); see also *Russell* v. *Mystic Seaport Museum, Inc.*, 252 Conn. 596, 616, 748 A.2d 278 (2000) (purpose of notice requirement is to allow defendant to conduct timely investigation of claim). Statutes of limitations also allow persons, "after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . ." (Internal quotation marks omitted.) *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 809–10, 12 A.3d 852 (2011). The one year statute of limitations set forth in the act also has a distinct importance, as insurance policies issued pursuant to an owner-controlled insurance program under the statute must provide coverage for work performed and materials furnished from the completion of the work until the date that all causes of action are barred under any applicable statute of limitations. General Statutes § 49-41 (e) (3) (A). None of these rationales applies to the duty of a surety to either pay or deny a bond claim within ninety days.

The plaintiff's argument also overlooks a number of relevant distinctions between the surety's response requirement and the claimant's duty to provide timely notice. The claimant, which has 180 days to serve notice of a claim, need only present its own version of the dispute in order to comply with the statutory deadline. It will presumably already be intimately familiar with the project, as well as the history and nature of its dispute with the principal, and will have access to many of the relevant documents. Indeed, the claimant may have begun to prepare and document a potential claim long before the statutory notice period ever begins to

run. Under those circumstances, we are hard pressed to imagine why nearly one half of a year would not afford adequate time for a claimant, acting diligently, to prepare and present such a claim.

As we have described previously herein, the surety, by contrast, may have little familiarity with the details of the project and no knowledge of the dispute giving rise to the claim prior to receiving notice from the claimant. At that point, the surety has just ninety days—one half of the time allotted to the claimant—to educate itself about the project, obtain all relevant documents and accounts of the dispute from the claimant, the principal, and various third parties (all of whose timely assistance may not be forthcoming), and make a determination as to which portions of the claim, if any, are properly payable. However it decides, the surety must anticipate that it may ultimately be drawn into litigation involving one or more parties to the dispute. If it is later found to have denied a claim in bad faith, the surety also will be liable for the claimant's attorney's fees. Under *those* circumstances, it does not strike us as unreasonable to conclude that a surety, acting diligently, may not always be able to determine fully the merits of a claim, in good faith, within ninety days of notice. Accordingly, because the claimant and the surety are not similarly situated with regard to their statutory obligations, we do not believe it unreasonable or unfair that the legislature would have imposed a mandatory duty on the one and a directory duty on the other.

The plaintiff's second argument is that because the act is a remedial statute; *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, supra, 239 Conn. 716; it should be construed broadly in favor of protecting the interests of claimants. We have indicated that the act is to be liberally construed with regard to whether a particular class of subcontractors or suppliers is eligible for statutory protection. *Okee Industries, Inc.* v. *National Grange Mutual Ins. Co.*, 225 Conn. 367, 373–74, 623 A.2d 483 (1993). We do not, however, construe remedial statutes so liberally as to provide windfalls for technical violations. *Weems* v. *Citigroup, Inc.*, supra, 289 Conn. 794. The purpose of the act is to ensure that subcontractors and suppliers on state projects have an adequate remedy at law should the principal contractor fail to pay them moneys properly due. There is no indication that the legislature, in protecting the legitimate interest of these groups in being paid for their work, intended that they would automatically prevail on any claim, no matter how lacking in merit, simply because of a surety's nonprejudicial delay in evaluating such claim.

The plaintiff's third argument is that if the ninety day response requirement is deemed to be merely directory, there will be no penalty for noncompliance and sureties

will have no incentive to satisfy their statutory obligations. We disagree. Section 49-42 (a) provides that a court may award reasonable attorney's fees to the claimant if the surety's denial of liability or the defense interposed to the claim is found to be "without substantial basis in fact or law." As we have indicated, a surety that fails to respond substantively to a notice of claim within ninety days has effectively denied the claim; see *Fisher Skylights, Inc.* v. *CFC Construction Ltd. Partnership*, 79 F.3d 9, 11 (2d Cir. 1996) (claimant must treat surety's silence as denial of claim and file action prior to running of statute of limitations); such that the claimant may bring an action at that time. Id. If the surety is later determined to have demonstrated bad faith in failing to respond within ninety days, it may be liable for the claimant's resulting attorney's fees.[15] We believe that this provision of the act provides sufficient incentive for a surety to promptly and diligently investigate any claims against its principal.

For the foregoing reasons, we conclude that the answer to part (b) of the first certified question is: No. With regard to part (a) of the first certified question, we hold that, assuming, without deciding, that § 49-42 establishes an "exhaustion requirement" by which a claimant may not file an action unless and until a surety has denied part or all of its claim, the surety's failure to pay or to deny the claim by the ninety day response deadline is to be treated as a denial for that purpose.[16] Because we answer part (b) of the first certified question in the negative, we need not address in depth the second certified question, which asks, in essence, whether a surety's request for further information satisfies its obligations under the act's response requirement. We simply observe that where a surety fails to pay or to deny a claim within ninety days and the claimant later prevails on the merits, whether the surety made a timely, sincere, and warranted request for additional information during the response period is one factor to be considered by the court in assessing whether to hold the surety liable for the claimant's attorney's fees.

Part (b) of the first certified question is answered in the negative. Guidance is provided as to the remaining certified questions.

In this opinion the other justices concurred.

[1] The act was patterned after the federal Miller Act, 40 U.S.C. § 3131 et seq. (2012) (formerly 40 U.S.C. § 270a et seq.). See *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 716, 687 A.2d 506 (1997).

[2] General Statutes § 51-199b (d) provides in relevant part: "The Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state."

[3] General Statutes § 49-42 (a) provides in relevant part: "Any person who performed work or supplied materials for which a requisition was submitted to, or for which an estimate was prepared by, the awarding authority and who does not receive full payment for such work or materials within sixty days of the applicable payment date provided for in subsection (a) of section 49-41a, or any person who supplied materials or performed subcontracting

work not included on a requisition or estimate who has not received full payment for such materials or work within sixty days after the date such materials were supplied or such work was performed, may enforce such person's right to payment under the bond by serving a notice of claim on the surety that issued the bond and a copy of such notice to the contractor named as principal in the bond not later than one hundred eighty days after the last date any such materials were supplied or any such work was performed by the claimant. . . . The notice of claim shall state with substantial accuracy the amount claimed and the name of the party for whom the work was performed or to whom the materials were supplied, and shall provide a detailed description of the bonded project for which the work or materials were provided. . . . Not later than ninety days after service of the notice of claim, the surety shall make payment under the bond and satisfy the claim, or any portion of the claim which is not subject to a good faith dispute, and shall serve a notice on the claimant denying liability for any unpaid portion of the claim. . . . If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the Superior Court for such sums and prosecute the action to final execution and judgment. An action to recover on a payment bond under this section shall be privileged with respect to assignment for trial. . . . In any such proceeding, the court judgment shall award the prevailing party the costs for bringing such proceeding and allow interest at the rate of interest specified in the labor or materials contract under which the claim arises or, if no such interest rate is specified, at the rate of interest as provided in section 37-3a upon the amount recovered, computed from the date of service of the notice of claim, provided, for any portion of the claim which the court finds was due and payable after the date of service of the notice of claim, such interest shall be computed from the date such portion became due and payable. The court judgment may award reasonable attorneys fees to either party if upon reviewing the entire record, it appears that either the original claim, the surety's denial of liability, or the defense interposed to the claim is without substantial basis in fact or law. . . ."

[4] General Statutes § 49-41 (a) provides in relevant part: "Each contract exceeding one hundred thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or a municipality shall include a provision that the person to perform the contract shall furnish to the state or municipality on or before the award date, a bond in the amount of the contract which shall be binding upon the award of the contract to that person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided for in the contract for the use of each such person . . . . Any such bond furnished shall have as principal the name of the person awarded the contract."

[5] In support of its motion for summary judgment, the defendant claimed that it is entitled to judgment as a matter of law because § 49-42 (a) contains no penalty provision.

[6] The amicus, Surety and Fidelity Association of America, similarly restricts its argument to part (b) of the first certified question.

[7] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[8] "A statutory provision that is directory prescribes what shall be done but does not automatically invalidate action upon a failure to comply." (Internal quotation marks omitted.) *Hall Manor Owner's Assn.* v. *West Haven*, 212 Conn. 147, 153, 561 A.2d 1373 (1989).

[9] See footnote 7 of this opinion.

[10] Although we have referred to some of these considerations as "tests," we generally have not treated any one consideration as dispositive, and in most cases we have evaluated the relevant language, structure, history, and purpose of the statute in determining whether the duty at issue was mandatory or directory. See, e.g., *United Illuminating Co.* v. *New Haven*, supra, 240 Conn. 465–66; *Katz* v. *Commissioner of Revenue Services*, supra, 234 Conn. 618–19. Accordingly, such considerations are more accurately identified as factors.

[11] See 30 S. Proc., Pt. 4, 1987 Sess., p. 1468, remarks of Senator James Maloney ("The amendment [to § 49-42] revises the procedures for claims under materialmen's bonds. What it does is in effect require that non-disputed

claims be paid, and only the contested portion of a claim would go to litigation. This will . . . eliminate a number of cases that otherwise might be brought . . . [a]nd will generally improve the orderliness of the materialmen's bonds procedure.").

[12] The present case is, thus, readily distinguishable from *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, supra, 236 Conn. 681. In that case, neither party could take further action on the employee's complaint until the Commission on Human Rights and Opportunities complied with its statutory obligations to complete an investigation within nine months, make a written finding of reasonable cause or no reasonable cause, and hold a hearing not later than ninety days after finding reasonable cause. Id., 689, 697.

[13] The plaintiff also directs our attention to several Superior Court decisions concluding that the relevant statutory language is mandatory. See *Barreira Landscaping & Masonry* v. *Frontier Ins. Co.*, 47 Conn. Supp. 99, 110, 779 A.2d 244 (2000); *Acoustics, Inc.* v. *Travelers Ins. Co.*, Superior Court, judicial district of New Britain, Docket No. CV-03-0519565-S (January 13, 2004) (36 Conn. L. Rptr. 476, 479); *Elwell* v. *United States Fidelity & Guaranty Co.*, Docket No. 99527, 1993 WL 407974, *1 (Conn. Super. October 1, 1993). For the reasons discussed herein, we are not persuaded by the reasoning of those decisions.

[14] We express no view on the determination of the federal District Court in *Millgard Corp.* that the requirement in § 49-42 (a) that a claimant notify the surety of any potential claims within 180 days is mandatory rather than directory.

[15] That is not to say that a surety's failure to resolve a claim within ninety days necessarily subjects the surety to liability for a bad faith denial of the claim. Even if it ultimately becomes clear that there was no substantial basis in law or fact for denying a claim, a surety does not subject itself to liability for the claimant's attorney's fees if, after a diligent and good faith effort to document and evaluate the claims, ninety days do not prove sufficient time for the surety to draw an informed conclusion. A surety's failure to promptly and diligently investigate a claim, however, may justify an award of fees should the claimant ultimately prevail on the merits.

In addition, we do not foreclose the possibility that judicial default could be an appropriate remedy in a situation in which the surety's failure to meet the ninety day response deadline results in substantial prejudice to the claimant. See *United Illuminating Co.* v. *New Haven*, supra, 240 Conn. 467 (assessor's failure to comply with statutory notice requirement did not entitle taxpayer to relief in absence of showing of prejudice); J. Evans, supra, 1 Legal Stud. 254–55 (actions taken pursuant to breach of directory duties may be voidable upon demonstration of prejudice). As we have noted, however, in most cases it will be difficult, if not impossible, for a claimant to establish that a surety's failure to respond within ninety days placed it in any worse position than the claimant would have found itself had the surety simply denied the claim on the ninetieth day.

[16] The dispute between the parties does not require that we resolve the question whether there is in fact such an exhaustion requirement, and whether, for example, a claimant may file an action under § 49-42 *during* the ninety day response period, without first waiting for the surety's response. See *Fisher Skylights, Inc.* v. *CFC Construction Ltd. Partnership*, supra, 79 F.3d 11.